**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 1, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ABIDAN GEDIONI PACAJA
VICENTE, a/k/a Abidan Pacaja
Gedioni,

   Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

   Respondent.

No. 11-9521
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

---

Abidan Gedioni Pacaja Vicente, a Guatemalan citizen, seeks review of the

Board of Immigration Appeals (BIA) order affirming the Immigration Judge's (IJ)

removal order against him. Both denied his claims for asylum, restriction on

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

removal,[1] and protection under the Convention Against Torture (CAT). We exercise jurisdiction under 8 U.S.C. § 1252(a)(1) and deny the petition for review.

## I. Background

Mr. Pacaja[2] entered the United States without inspection in May 2003 at the age of 14. In December 2007, the Department of Homeland Security served him with a notice to appear, charging him with removability for unlawful presence in the United States. He conceded removability and on July 15, 2008, applied for asylum, restriction on removal, and CAT protection.

At the IJ hearing, Mr. Pacaja testified about an event in Guatemala in 2002 when he was 13. He, his older brother, and younger sister were walking home from school. Some men wearing dark green clothing, green berets, and axes on their backs approached them. Mr. Pacaja assumed they were military personnel. The men asked the children to name the guerilla chiefs. When Mr. Pacaja's brother said they did not know anything, the men got angry and kidnapped the boy. The next day, the family found the boy's abandoned body riddled with bullet holes and machete lacerations. Mr. Pacaja's asylum application stated that

[1]    "Restriction on removal" was known as "withholding of removal" before the amendments to the Immigration and Nationality Act (INA) made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. The INA regulations retain the former term "withholding of removal." *See, e.g.,* 8 C.F.R. § 208.16(b). We refer to "restriction on removal" pursuant to the statutory definition. *See* 8 U.S.C. § 1231(b)(3); *Razkane v. Holder*, 562 F.3d 1283, 1285 n.1 (10th Cir. 2009).

[2]    The record refers to "Mr. Pacaja."

the following message was attached to his brother's body: "This is how they die, and will keep dying when you don't tell the truth." R. at 587.

Mr. Pacaja testified that shortly after his brother was killed, his father left Guatemala. He said his father feared that the Guatemalan military was searching to kill him because in about 1982 he had run away from the military at the age of 14. Mr. Pacaja further stated that his grandfather was a politician in Guatemala, but he did not know what position he held, and that at an unspecified time the authorities broke down his home's door looking for the grandfather.

Mr. Pacaja related that when he was 14, he left Guatemala and entered Mexico illegally, where he supported himself by doing farm jobs. Eight or nine months later, he entered the United States. He found his father in North Carolina, and they soon moved to Jackson, Wyoming. Mr. Pacaja left his father and moved to Virginia, where he stayed with a cousin. He worked to pay rent and living expenses. He later returned to Jackson.

Mr. Pacaja testified that his mother, four siblings, and grandfather still live in the same county in Guatemala where his brother's death occurred. His father has traveled between Guatemala and the United States. Mr. Pacaja testified that he feared returning to Guatemala because the military would target him for persecution and death as the eldest surviving son of the family.

The IJ received a written statement from Mr. Pacaja's mother stating that she believed G2, a Guatemalan military group, killed her son. *Id.* at 401. The

-3-

mother's statement also described threats shouted from black cars driving past her family's house at night. *Id.* at 402.

The IJ first concluded that Mr. Pacaja's asylum application was untimely and further determined that Mr. Pacaja had not established extraordinary circumstances to excuse the untimely filing. In an alternative ruling, the IJ denied Mr. Pacaja's petition because he failed to establish a nexus between the 2002 event and either a political opinion or membership in a particular social group. The BIA affirmed on the latter ground.

## II. Analysis

### A. Standards of Review

A single member of the BIA entered the BIA's brief affirmance order under 8 C.F.R. § 1003.1(e)(5). We therefore review the BIA's decision as the final order of removal but "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). In addition, "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* (internal quotation marks omitted).

Although we review the BIA's legal determinations de novo, we review its factual findings under the substantial evidence standard. *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009). Thus, we must "look to the record for 'substantial evidence' supporting the agency's decision: [O]ur duty is to

-4-

guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (internal quotation marks omitted). "The agency's findings of fact are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Ismaiel v. Mukasey*, 516 F.3d 1198, 1204 (10th Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B) (further quotation omitted)).

## B. Timeliness of Asylum Petition

Mr. Pacaja first argues that his asylum application was timely. The IJ ruled that Mr. Pacaja's asylum petition was untimely and that he had not shown extraordinary circumstances to excuse the late filing. *See* 8 U.S.C. § 1158(a)(2)(B), (D). The IJ then addressed the merits of Mr. Pacaja's petition. The BIA did not address the timeliness issue. It assumed that Mr. Pacaja "established that he timely filed his application for asylum or that an exception applie[d]." R. at 3.

We are precluded from addressing the timeliness issue because "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro*, 443 F.3d at 1204; *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (stating federal courts will not affirm agency decisions based on reasoning not considered by the agency). Because the BIA did not rely on untimeliness to deny Mr. Pacaja's asylum petition, we turn to the merits.

## C. Merits of Asylum Petition

### 1. **Legal Standards**

"To be eligible for a discretionary grant of asylum, an alien must be a refugee." *Niang v. Gonzales*, 422 F.3d 1187, 1194 (10th Cir. 2005); *see also* 8 U.S.C. § 1158(b)(1). The definition of "refugee" includes a person who is outside a country of his or her nationality and who is unable or unwilling to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Refugee status may be based on past persecution in the country of nationality or on a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b).

If the alien "establish[es] that he or she has suffered past persecution, [that] gives rise to a [rebuttable] presumption that he or she has a well-founded fear of future persecution." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) (internal quotation marks omitted).[3] The government may prevent the grant of asylum if it rebuts the presumption by showing by a preponderance of the evidence that "(1) there has been a fundamental change in circumstances, such that the applicant no longer has a well-founded fear of persecution; or (2) the

---

[3]     Past persecution may also give rise to "humanitarian asylum if the applicant demonstrates that the persecution was so severe that it provides 'compelling reasons for being unwilling or unable to return.'" *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 n.4 (10th Cir. 2005) (quoting 8 C.F.R. § 208.13(b)(1)(iii)(A)).

applicant could avoid future persecution by relocating to another part of the applicant's country." *Rivera Barrientos v. Holder*, 658 F.3d 1222, 1227 (10th Cir. 2011) (internal quotation marks omitted). To be eligible for asylum based on past persecution, "an applicant must show: (1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control." *Niang*, 422 F.3d at 1194-95 (internal quotation marks omitted); *see also* 8 C.F.R. § 208.13(a) (stating alien bears the burden to establish that he is a refugee and thus eligible for asylum).

"For persecution to be 'on account of' [political opinion or] membership in a social group, the victim's [political opinion or group membership] must be central to the persecutor's decision to act against the victim." *Niang*, 422 F.3d at 1200 (social group); *Rivera Barrientos*, 658 F.3d at 1228 (political opinion); *see also* 8 U.S.C. § 1158(b)(1)(B)(i) (placing burden of proof on the applicant to establish that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant"). Thus, the protected characteristic "cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010). "To reverse the BIA, the record must establish that any reasonable adjudicator would be compelled to conclude that one of the

central reasons" the military men targeted Mr. Pacaja was because of his political beliefs or social-group membership. *Id.*

## 2. **Mr. Pacaja's Asylum Claims**

### a. Political Opinion

Mr. Pacaja asserts that the Guatemalan military persecuted him based on the men at the 2002 incident perceiving him as having knowledge of or ties to guerilla groups. Such a perception, he argues, constitutes a political opinion imputed to him. His claims of past persecution and fear of future persecution are based on (1) the 2002 incident resulting in his brother's death, (2) his father's desertion from the Guatemalan military as an adolescent in 1982, (3) his grandfather's political position, and (4) his mother's written statement that the family has received threats. To qualify for asylum, he must show a connection between these alleged acts of persecution and the imputed political opinion.

Mr. Pacaja has failed to establish the existence of a cognizable political opinion with respect to the 2002 incident. He contends that the military group imputed to him a political opinion that "he and/or his family had or has ties to guerilla groups." Aplt. Br. at 27. He bases this argument on his testimony that the men asked "who were the chiefs of the guerilla." R. at 295. This request for information did not impute a political opinion to Mr. Pacaja and his siblings. Although the questions about guerilla chiefs and even the words left on the brother's body may at most have reflected the political opinion of the questioners,

-8-

Mr. Pacaja must show that his own political opinion was the reason he was persecuted. *INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992). There is no indication that the men believed that the children's refusal to provide information was politically based.[4]

Evidence that Mr. Pacaja's father feared the military and that his grandfather had held a political position does not assist Mr. Pacaja to show that the military men persecuted him because of his political opinion. It does not establish the necessary connection between the alleged persecution and the political opinion Mr. Pacaja claims was imputed to him.

Evidence that Mr. Pacaja's family received nonspecific threats that they should be careful does not constitute persecution. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1234 (10th Cir. 2004) ("Threats alone generally do not constitute persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." (internal quotation marks omitted)). The record lacks evidence that Mr. Pacaja's family who remain in Guatemala have experienced or are experiencing persecution. *See id.* Substantial evidence supports the BIA's

---

[4]     Because Mr. Pacaja failed to present any evidence that the military men attributed to him any political opinion, we need not address whether this circuit recognizes "imputed political opinion" as a ground for relief. *See Ustyan v. Ashcroft*, 367 F.3d 1215, 1217 (10th Cir. 2004) (observing that other circuits have held that imputed political opinion may be a basis for relief); *Elzour v. Ashcroft*, 378 F.3d 1143, 1149 n.6 (10th Cir. 2004) (same).

-9-

determination that Mr. Pacaja failed to demonstrate that any persecution he suffered was on account of the protected ground of political opinion.

### b. Particular Social Group–Maya-Quiche

Mr. Pacaja adduced no evidence that the military men approached him because he was descended from the Maya-Quiche Indigenous Peasant Farmers. The men did not mention his ethnic background. Although Mr. Pacaja asserts that the government and/or the military persecutes Maya-Quiche Indigenous Peasant Farmers, the record does not contain evidence about this group. Mr. Pacaja instead addressed the Guatemalan indigenous population in general, noting that they are under-represented in politics and have limited educational and employment opportunities. He did not produce evidence showing that violence against indigenous persons is greater than violence against the rest of the population. *See, e.g.*, R. at 498 (United States Department of State Country Report for 2007). Because Mr. Pacaja has not shown that any persecution was based on his ethnicity, he has failed to show that he was persecuted "on account of" his membership in a particular social group.[5]

---

[5] Because we hold that Mr. Pacaja's claim fails for lack of evidence that any persecution was on account of this protected ground, we, like the BIA, do not decide whether Maya-Quiche Indigenous Peasant Farmers qualify as a particular social group under § 1101(a)(42)(A). *See Rivera Barrientos*, 658 F.3d at 1228-35 (discussing "the evolving boundaries of social group membership").

c.  Particular Social Group–Eldest Son

Mr. Pacaja claims membership in the particular social group that he defines as the eldest living son in a family who is thought to have knowledge of or ties to guerilla groups.  Mr. Pacaja suggests that he would be targeted as his family's eldest surviving son.  This speculation fails to demonstrate that any reasonable adjudicator would be compelled to conclude that the BIA erred in holding that Mr. Pacaja did not suffer persecution on this ground and therefore that he cannot show a well-founded fear of future persecution.[6]

## IV.  Restriction on Removal and CAT Claims

"To obtain restriction on removal, the alien must demonstrate that [his] 'life or freedom would be threatened in [the proposed country of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion.'"  *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280

---

[6]  Mr. Pacaja argues that because he was 13 at the time of the incident resulting in his brother's death, the IJ was required to consider his claims from the perspective of a child, citing *Jorge-Tzoc v. Gonzales*, 435 F.3d 146, 150 (2d Cir. 2006) (vacating determination that petitioner had not established past persecution because agency failed to consider significant evidence of massacres from the perspective of a seven-year-old child who was dependent on his family and community); INS Pol'y and Proc. Mem., *Guidelines for Children's Asylum Claims*, 1998 WL 34032561 (INS); FIM-OPPM 07-01, *Guidelines for Immigration Court Cases Involving Unaccompanied Alien Children* (May 2007). These authorities do not excuse a child from the requirement that the alleged harm be tied to a protected ground.  Moreover, the IJ stated both during the hearing and in his oral ruling that he had scrutinized more closely Mr. Pacaja's persecution claim because he was a child at the time.  R. at 145, 370.

(10th Cir. 2005) (quoting 8 U.S.C. § 1231(b)(3)(A)).  Mr. Pacaja has failed to establish that he is entitled to discretionary consideration for asylum.  It follows that he has failed to establish that he is entitled to restriction on removal, which "requires a petitioner to meet a higher standard than that for asylum." *Ustyan v. Ashcroft*, 367 F.3d 1215, 1218 (10th Cir. 2004) (internal quotation marks omitted).

"Article 3 of the Convention Against Torture prohibits the [return] of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (internal quotation marks omitted).  Because there is no such evidence in the record, Mr. Pacaja failed to carry his burden of proof, *see* 8 C.F.R. § 1208.16(c)(2), and the BIA correctly affirmed the IJ's decision denying Mr. Pacaja's request for CAT relief.

### III.  Conclusion

The petition for review is DENIED.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge